FRANCIS M. HALL et al.

v.

SHEER, TOMPKINS & CO.

MORTGAGE—*as against one perfecting title in trust for the person owing the mortgage debt.* Where a married woman conveyed land owned by her, to A, taking back notes secured by mortgage on the land for the purchase money, but her husband did not unite with her in the deed under the belief it was not necessary, and A afterwards sold to the defendant, who went into possession, promising to pay the notes of A, and gave his mortgage on the premises to A for the balance due above the notes of A outstanding, and the defendant afterwards, on learning of the defect in his title, sent his son to procure a deed from the original vendor and her husband, which they gave to remedy the defect, but the son took the deed in his own name: *Held*, on bill by the assignee of the first notes and mortgage to foreclose, and on cross-bill by A to foreclose, that the acquisition of the legal title in the manner stated presented no bar to the foreclosure, and that the title claimed by the son was subject to both mortgages, he being but a trustee for his father.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Mr. LAWRENCE WELDON, and Mr. S. S. LAWRENCE, for the plaintiffs in error.

Messrs. WILLIAMS, BURR & CAPEN, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill filed by Wm. Sheer, Philip H. Tompkins and Artemus O. Sheer, to foreclose a mortgage on a certain quarter section of land in Livingston county.

The land originally belonged to Martha Wilson, a married woman, who, on the 11th day of February, 1867, sold and conveyed the land to Laura Templeton. The husband of Mrs. Wilson was present and consented to the sale, but did not join in the deed, as he was told by the party who drafted

the papers it was unnecessary for him to join in the conveyance.

Mrs. Templeton, upon receiving the deed, gave Mrs. Wilson her notes, and a mortgage on the premises, to secure the unpaid balance of the purchase money. This mortgage and the notes were transferred to the complainants in the original bill.

Subsequently, Mrs. Templeton sold and conveyed the premises to Timothy Hall, who, by the contract of purchase, assumed the payment of the notes and mortgage given by Mrs. Templeton to Mrs. Wilson, and gave his own note and a mortgage on the premises to Mrs. Templeton to secure the balance of the purchase price of the land over and above the notes and mortgage by him assumed.

Laura Templeton, Timothy Hall, Francis M. Hall and C. E. Hall were made defendants to the bill.

Laura Templeton, in her answer to the bill, admits, substantially, all the allegations therein contained, and sets up the second mortgage given by Hall to her as a second lien upon the premises. She also filed a cross-bill in which she prayed a foreclosure of her mortgage.

C. E. Hall answered, disclaiming any title or interest whatever in the premises.

The defense interposed by Francis M. Hall to the bill and cross-bill, as we understand it, is, that the deed of Martha Wilson conveyed no title; that, subsequently, her husband died, and she married one Thomas LeFevre ; and that, on the 30th day of September, 1870, in consideration of $30, he procured a quit-claim deed of the premises from Martha and Thomas LeFevre, which vested the legal title in him.

Timothy Hall bases his right to defeat the foreclosure of the mortgages on the ground, that no title passed from Martha Wilson to Laura Templeton, and none from Laura Templeton to him, and hence the consideration for his agreement to assume and pay the notes and mortgage first given on the land, as well as the consideration for the mortgage given by him, have failed.

We have given the evidence preserved in the record a care-ful consideration, and it is apparent that the defense inter-posed by the Halls is totally devoid of all merit, either legal or equitable.

It appears, from the evidence, that Timothy Hall went into possession of the land at the time he purchased, and still occupies it. In the winter of 1869 or 1870, he applied to a Mr. Hotchkiss to obtain a loan of money, and desired to give security upon the land. He then, for the first time, learned of the defect in the chain of title. Some time after this, he informed Hotchkiss that he had "got the title to his land straightened up;" that he had sent to Iowa and found Mrs. Wilson (then Mrs. LeFevre,) and obtained a quit-claim deed of her and her husband; that the deed was made to his son; that he sent his son, for the reason he was a railroad man and could travel cheaper than he could.

Thomas LeFevre, and Martha, his wife, testified that, in the month of September, 1870, Francis M. Hall came to them in DesMoines, Iowa, and stated he was the son of Timothy Hall, and had been sent by him to them to procure a quit-claim deed for his father, in order to perfect his father's chain of title, which was defective; that he was doing business for his father, and came for him; that, as soon as the deed was procured, the mortgages on the land would be paid and dis-charged. They further testified, they executed the deed, sup-posing it was made to Timothy Hall; that they received no consideration for the deed, but made it for the purpose of cur-ing a defect in the title; that, after the deed had been execu-ted, Francis M. Hall made a present of $5 to Martha LeFevre, but it was not paid or received as a consideration for the deed.

It is true, this evidence is contradicted by Francis M. Hall, who testifies that he went to Iowa and purchased the land, and paid $30 for it on his own account and for his own benefit; yet his story is so unreasonable and so thoroughly in

conflict with other facts established by the record, that it can not be regarded as of much force.

The land was worth $7000 when Francis M. Hall obtained the deed.   He says that Martha LeFevre knew the conveyance she had previously made was worthless, and she did not wish to convey, but wanted to leave it as it was so that her children could get the land when they became of age; and yet, she finally conveyed to him for $30, as she was in need of money.

It is unreasonable to suppose that Mrs. LeFevre would have conveyed property worth $7000 for the sum of $30, with a full knowledge of all the facts in regard to the title and value of the land, unless the conveyance was made with the intent and for the purpose of confirming the deed she had originally made.

It is possible, although not probable, that Francis M. Hall would have conceived the notion, and carried it into execution, of ferreting out defects in the title to his father's farm and then speculating out of those defects at the expense of his father.

The clear weight of the evidence establishes the fact that the consideration for the deed to Hall was the original purchase.   Mrs. LeFevre knew she had conveyed the land, but, by a misdirection of the scriviner, her husband did not execute the deed, and the title did not pass.  When her attention was called to the fact, she was willing to rectify the mistake and perfect the title in Timothy Hall, who had purchased of her grantee.

The deed was made to Francis M. Hall for Timothy Hall; the former holds the title for the latter, and subject to the two mortgages.

The decree of the circuit court, directing a sale of the land to pay and satisfy the two mortgages, was clearly right.  The decree will, however, be modified as to C. E. Hall, who disclaimed; he will be dismissed from the bill.  In all other respects the decree will be affirmed.        *Decree affirmed.*